## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRANDON RIGGINS**                                      **CIVIL ACTION**

**versus**                                                       **NO. 12-737**

**BURL CAIN, WARDEN**                              **SECTION: "G" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Brandon Riggins, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On May 16, 2006, he was convicted of armed robbery and

aggravated kidnapping under Louisiana law.[1]  On June 30, 2008, he was sentenced on the armed robbery conviction to a term of ninety-nine years imprisonment and on the aggravated kidnapping conviction to a term of life imprisonment.  It was ordered that those sentences be served consecutively and without benefit of parole, probation, or suspension of sentence.[2]  On April 7, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on January 22, 2010.[4]

On or about June 14, 2010, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on July 23, 2010.[6]  He thereafter also filed a supplemental application[7] which was likewise denied on August 17, 2010.[8]  His related writ

---

[1]  State Rec., Vol. I of III, transcript of May 16, 2006, pp. 77-78; State Rec., Vol. I of III, minute entry dated May 16, 2006.

[2]  State Rec., Vol. I of III, transcript of June 30, 2008; State Rec., Vol. I of III, minute entry dated June 30, 2008.

[3]  State v. Riggins, 13 So.3d 187 (La. App. 5th Cir. 2009) (No. 08-KA-714); State Rec., Vol. III of III.

[4]  State v. Riggins, 25 So.3d 129 (La. 2010) (No. 2009-K-1045); State Rec., Vol. II of III.

[5]  State Rec., Vol. II of III.

[6]  State Rec., Vol. II of III, Order dated July 23, 2010.

[7]  State Rec., Vol. II of III.

[8]  State Rec., Vol. II of III, Order dated August 17, 2010.

applications were then denied by the Louisiana Fifth Circuit Court of Appeal on December 2, 2010,[9] and by the Louisiana Supreme Court on November 14, 2011.[10]

On or about February 22, 2012, petitioner filed a timely application for federal *habeas corpus* relief.[11]  On October 9, 2012, the state filed a response to that application, arguing, *inter alia*, that one of petitioner's claims, i.e. his claim challenging the sufficiency of the evidence, was unexhausted.[12]  Petitioner then filed a motion asking for leave to file an amended petition to delete the unexhausted claim.[13]  That motion was granted.[14]  On or about November 30, 2012, he filed his amended petition which sought relief on only his exhausted claims,[15] and, on January 3, 2013, the state notified the Court that its original response was sufficient and, therefore, no additional response would be filed.[16]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

---

[9] Riggins v. Cain, No. 10-KH-725 (La. App. 5th Cir. Dec. 2, 2010); State Rec., Vol. II of III.

[10]  State *ex rel.* Riggins v. State, 75 So.3d 936 (La. 2011) (No. 2011-KH-0023); State Rec., Vol. II of III.

[11]  Rec. Doc. 3.

[12]  Rec. Doc. 12.

[13]  Rec. Doc. 13.

[14]  Rec. Doc. 14.

[15]  Rec. Doc. 15.

[16]  Rec. Doc. 16.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> The victim, Owen Santiago, testified that on April 14, 2004, he drove home from his job at Chevy's Restaurant to his home on Salem Street in Kenner.  As he was getting out of his car at his home, four men approached him, two of them holding pistols.  They grabbed him, put him in the back of his car, and told him they would kill him if he did not give them money.  Santiago thought he would

– 6 –

die because he was not cooperating with them. He later learned the man sitting on his right in the back seat was "Brandon."

The men drove him around Jefferson Parish and into Orleans Parish, continuing to demand money, and told him to call someone for money. In New Orleans they took him to a housing project, where they got out of the car. They strip-searched Santiago and told him they would take turns beating him. They took earrings, a medallion, and a chain he was wearing. He recalled that when he still did not give them money Brandon said, "[J]ust kill that nigger, and throw him in the trash can."

Then some passersby approached, so the assailants opened the trunk, removed the tires, and put Santiago in the trunk. They took him for a ride and returned to Metairie. Santiago was able to open the trunk and, as the car slowed to come to a stop, he jumped out, losing his shoes in the process. He ran to a Circle K store to call the police.

When the police responded, he took them to the places where his tires had been thrown out, where his shoes had fallen, and where his car, now burned, was recovered. They found his tires and his shoes at the locations where they had fallen.

The following day, Santiago viewed a photographic lineup, from which he made a positive identification of the defendant as the man who was seated to his right in the car when he was kidnapped. This photographic array was introduced into evidence as State's Exhibit 8. Santiago was positive about this identification. He stated that if he had the opportunity to view the defendant at trial that day, he would be able to identify him.[FN1]

> [FN1] The defendant was present during voir dire but absented himself from the remainder of his trial ....

Detective Keith Forsythe of the Kenner Police Department testified he investigated the armed robbery and kidnapping of Santiago. He accompanied Santiago to the locations at which his tires and shoes had been left. Detective Forsythe said he quickly developed two suspects, one of whom was Brandon Riggins. He put together a photographic line-up that included Riggins and showed this lineup to Santiago, who identified Riggins. He asked Santiago to write his name and the date and time on the rear of the photograph Santiago had identified. Based on Santiago's identification, Detective Forsythe obtained an arrest warrant for Riggins in April 2004, and Riggins was arrested in September 2004.

Detective Forsythe testified that Santiago had no problem identifying Riggins from the photographic lineup. Forsythe said he himself could identify Brandon Riggins if he were present in court.

Detective Jesse Johnson of the Kenner Police Department testified he went to the home of Brandon Riggins on September 29, 2004 to execute an arrest warrant. He found Riggins hiding in the closet in the rear bedroom. Johnson also testified that if Brandon Riggins were present in court, he would be able to identify him.

Sergeant Robert Meyer, also with the Kenner Police Department, testified he assisted in the arrest of Brandon Riggins. He found the defendant in a closet in a rear bedroom. Meyer also said that if the defendant had been in court, he could identify him.

Officer Matthew Glapion of the Kenner Patrol Division testified that in the early morning hours of April 15, 2004, he saw the defendant on Airline Highway, in the company of Marcus Williams, James Converse, and an unidentified black male.[FN2] Minutes later he saw a fire, which turned out to be the victim's burning car. Officer Glapion testified that if the defendant had been in court, he could have made an identification. He had no doubt the men he saw were Brandon Riggins, Williams, and Converse.

> [FN2] Marcus Williams was a co-defendant in this case, but was tried separately from Brandon Riggins.[17]

As for reason for petitioner's absence from trial, the Court of Appeal noted:

The defendant appeared for trial on May 16, 2006 and was present during jury selection that morning. A jury was selected and sworn in, then the court recessed for lunch. When court resumed following the lunch recess, the defendant failed to return to court. Defense counsel informed the court,

> I heard from my client at 1:20. I walked him down and went to get some lunch, you know, which was no problem. I went to the Westbank Expressway, I got a call back from him ... around 1:55, ... and he said he was on his way back, and would be about five minutes.

---

[17] State v. Riggins, 13 So.3d 187, 189-90 (La. 2009) (No. 08-KA-714); State Rec., Vol. III of III.

The trial judge pointed out it was then ten minutes to 3:00.  The prosecutor stated the State wished to proceed with the trial; defense counsel objected, and the judge stated, "Your client voluntarily absented himself, so we're going to go ahead and go forward." Despite defense counsel's objection, the jury was brought into the courtroom and the trial proceeded.[18]

III.  Petitioner's Claims

A.  Denial of Recess

Petitioner's first claim is that his rights were violated when the trial court denied a defense motion for a recess to obtain the presence of a witness who had been served with a trial subpoena but failed to appear.  On direct appeal, the Louisiana Fifth Court of Appeal rejected that claim, holding:

> [T]he defendant asserts the trial court abused its discretion in denying defense counsel's motion for a recess in order to obtain the presence of a witness who had been served with a trial subpoena but failed to appear.
>
> Prior to trial, the defense subpoenaed a number of witnesses and filed notices of alibi witnesses as well, which listed eight persons who might be called to testify that the defendant was at Mike's Bar at 433 Veterans Highway in Kenner at the time of the alleged crimes.
>
> During trial the court's minute clerk reported the returns on service of the potential witnesses.  Only two had been served, Lakeisha Robinson (one of the persons listed in the notices of alibi witnesses) and Randy Riggins.  Thus, the defendant could have hoped for the attendance of only those two witnesses who had been served.  However, neither Robinson nor Randy Riggins showed up at court for the trial.
>
> Defense counsel requested that the court recess the trial and allow him to request issuance of an instanter subpoena for Robinson. The court denied his request and defense counsel objected, arguing he was only asking for the same courtesy that is often given to the

---

[18]  Id. at 190 (footnote omitted).

prosecution.  The court advised him, "If I thought there was any chance of your client showing up I would do that."

The defense rested its case without calling any witnesses.

On appeal the defendant asserts the denial of the motion for recess was an abuse of the court's discretion because it denied the defendant his constitutional right to put on a defense and because the denial was in retaliation for the defendant's failure to show up for the completion of his trial.

A recess is a temporary adjournment of a trial or hearing that occurs after the trial or hearing has commenced; in contrast, a continuance is the postponement of a scheduled trial or hearing, and a continuance may not be granted after the trial or hearing has commenced.  La.C.Cr.P. art. 708.

Despite the differing definitions of a continuance and a recess, a motion for a recess is governed by the same standards as a motion for a continuance.  State v. Rodriguez, 02-334, p. 14 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 117, writ denied, 03-0482 (La. 5/30/03), 845 So.2d 1061, cert. denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003).  In general, whether to grant or deny a recess rests within the sound discretion of the trial judge, and a reviewing court will not disturb the ruling absent a clear abuse of discretion.  State v. Hampton, 1998-0331, p. 9 (La. 4/23/99), 750 So.2d 867, 877.

A motion for a continuance based on the absence of a witness must meet specific criteria. La.C.Cr.P. art. 709 provides the motion must state:

> (1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
>
> (2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
>
> (3) Facts showing due diligence used in an effort to procure attendance of the witness.

The trial court has great discretion in granting a recess; denial of a motion for a recess is not grounds for reversal, absent an abuse of that discretion and the showing of specific prejudice.  State v. Stevenson, 02-0079, p. 3 (La.App. 5 Cir. 4/30/02), 817 So.2d 343,

345.  To show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony the witness would have given would have been favorable to the defense and would indicate the possibility of a different result.  Id.

Under La.C.Cr.P. art. 737, a court is empowered to order the attachment of a witness who fails to comply with a subpoena.  In State v. George, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, the defendant subpoenaed a co-worker who failed to appear at trial despite personal service.  The defendant requested an attachment, which the trial court denied.  On appeal, the second circuit observed that the witness' testimony was not material and that the court was not assured the witness would be present when trial resumed after recess.  Id., 26,867 at p. 13, 652 So.2d at 1391.

Here, in making the oral motion for a recess the defense failed to establish all the required facts.  Although it was established that due diligence was used to procure Robinson's attendance, because she had been subpoenaed, the defense failed to state the facts to which Robinson was expected to testify, or to state facts and circumstances showing a probability Robinson would be available at the time to which the trial would be deferred.  The mere suggestion that Robinson may have provided the defendant with an alibi is insufficient to satisfy the requirement of that facts be offered to prove her presence at trial necessary to the defendant's case.

The defendant failed to meet the statutory requirements for a recess.  State v. Johnson, 03-620, p. 9 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 2003-3171 (La. 3/19/04), 869 So.2d 849.  Under the circumstances, we find no abuse of discretion in the trial court's ruling on the request for a recess.[19]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[20]

With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

---

[19]  Riggins, 13 So.3d at 191-92; State Rec., Vol. III of III.

[20]  State v. Riggins, 25 So.3d 129 (La. 2010) (No. 2009-K-1045); State Rec., Vol. II of III.

A motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on a direct appeal unless there is a showing that there has been an abuse of that discretion. United States v. Uptain, 531 F.2d 1281 (5th Cir. 1976); United States v. Gidley, 527 F.2d 1345 (5th Cir. 1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1977). When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir. 1975).

The Supreme Court addressed this subject in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Citations omitted.)

When a motion for a continuance for the purpose of securing defense witnesses is denied, our cases have identified the following factors in considering whether denial of the motion was an abuse of the trial court's discretion:

> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be

> favorable to the accused, and the unique or
> cumulative nature of the testimony.

United States v. Uptain, 531 F.2d at 1287 (footnotes omitted).

Hicks v. Wainright, 633 F.2d 1146, 1148-49 (5th Cir. 1981).

Therefore, even if defense counsel in the instant case could perhaps be said to have acted diligently to secure the presence of witnesses for trial, such diligence alone would be insufficient to warrant *habeas* relief. Rather, as noted, petitioner must also show that the absence of a witness rendered his trial "fundamentally unfair." That showing clearly has not been made here. Indeed, petitioner never offered any evidence whatsoever to show that the witness at issue, Lakeisha Robinson, would have testified in a manner beneficial to the defense.[21] In light of that fact, he has failed to meet his burden to prove that her absence prejudiced him in any way or rendered his trial fundamentally unfair. See, e.g., Higgins v. Quarterman, No. 2:04-CV-0154, 2007 WL 2695279, at *9 (N.D. Tex. Sept. 14, 2007) ("[P]etitioner merely offers his own conclusory statements, without any evidentiary support, as to the purported testimony of these witnesses. A petitioner's bald assertions, unsupported and unsupportable by anything contained in the record, are not to be

---

[21] In his amended federal petition, petitioner stated that he had obtained a "sworn affidavit recently signed by Ms. Robinson" which he would mail to this Court "shortly." Rec. Doc. 15, pp. 13 and 31. There are, however, two fatal problems with respect to that affidavit. First, although the amended petition was filed over five months ago, the Court has never received the purported affidavit. Second, even if the affidavit exists and were to be submitted to this Court, it would be of no moment. Where, as here, a petitioner's claim was adjudicated on the merits by the state courts, a federal *habeas* court's review of that claim is strictly limited to the record that was before the state courts. Cullen v. Pinholster, 131 S.Ct. 1388, 1398-99 (2011). Therefore, an affidavit from Robinson which was not presented to the state courts simply could not be considered by this Court. See, e.g., Jimenez v. Thaler, No. 12-10105, 2013 WL 1632803, at *1 (5th Cir. Apr. 17, 2013); Lewis v. Thaler, 701 F.3d 783, 789-91 (5th Cir. 2012), cert. denied, 2013 WL 655515 (U.S. Apr. 1, 2013).

afforded probative evidentiary value on habeas review.").[22]  Therefore, he obviously cannot show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Accordingly, under the deferential standards of review mandated by the AEDPA, this Court should likewise deny the claim.

### B.  Ineffective Assistance of Counsel

Petitioner also claims that his trial counsel was ineffective.  The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance

---

[22]   Petitioner's claim appears to be limited to the denial of a recess to obtain Robinson's presence. However, even if the claim were construed to also encompass the denial of recess to obtain the presence of Randy Riggins, both the analysis and the result here would be the same.

is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United

States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of

ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed

the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

Here, petitioner claims that his counsel was ineffective for failing to ascertain prior to trial whether the defense witnesses were present to testify and for failing to ensure that all available means were exhausted to serve the subpoenas on those witnesses. In the state post-conviction proceedings, the district court denied relief under <u>Strickland</u>, holding:

[T]he petitioner has a Sixth Amendment right to effective counsel. Defense counsel's performance will be evaluated by reviewing courts under the familiar test of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To be successful in arguing ineffective assistance of counsel, a petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the

point that the results of the trial cannot be trusted.  Both prongs of the Strickland test must be established before relief will be granted.

There is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance based on hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Mindful of controlling federal and state jurisprudence, the court now turns to petitioner's specific claims of ineffective assistance made in the instant application and argued in the petitioner's memorandum in support.

Petitioner argues that trial counsel was ineffective in failing to determine if alibi witnesses were present prior to trial, and by not exhausting all available means to have the witnesses personally served.  As the state points out, petitioner and his witnesses left the trial prior to opening statements and did not return.  Trial counsel filed a witness list, checked service prior to trial, and had several witnesses served the day before trial.  Additionally, trial counsel moved for a recess to allow more subpoenas, which was denied by the court.  The Fifth Circuit upheld the trial court's ruling on appeal.

Petitioner does not show how counsel's performance was deficient. Additionally, petitioner does not provide any evidence that would establish how he was prejudiced.  The court finds as a matter of law that the petitioner has failed to meet his burden of proof or to prove a violation of the Strickland standard.  The claim does not establish a basis for granting relief.[23]

---

[23]  State Rec., Vol. II of III, Order dated July 23, 2010.

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal then held:

> We ... find the trial court correctly denied relator's claims of ineffective assistance of counsel ... because he did not meet his burden of proving his counsel's performance was deficient or that he was prejudiced, pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  His trial counsel filed a witness list prior to trial, had the witnesses served the day before trial, checked service on the witnesses prior to trial, and moved for a recess to issue additional subpoenas.  On appeal, this Court also noted that relator's counsel did object to the trial court's denial of his request for an instanter subpoena on the witness.  Therefore, we find the trial court correctly found that relator had not proven his ineffective assistance of counsel claim.[24]

The Louisiana Supreme Court thereafter denied petitioner's related writ application without assigning additional reasons.[25]

This Court need not reach the issue of whether counsel's performance was deficient in the respects argued, because, as previously noted, that alone would not entitle petitioner to relief. Rather, to prevail on his ineffective assistance claims, petitioner would also have to show that he was prejudiced by that performance.  Here, he has not made that showing, in that he has never produced any evidence whatsoever, such as affidavits from the missing witnesses, demonstrating that they would have testified in a manner beneficial to the defense.[26]  As a result, he clearly has not met his burden of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d

---

[24] Riggins v. Cain, No. 10-KH-725 (La. App. 5th Cir. Dec. 2, 2010); State Rec., Vol. II of III.

[25] State ex rel. Riggins v. State, 75 So.3d 936 (La. 2011) (No. 2011-KH-0023); State Rec., Vol. II of III.

[26] See supra note 21.

– 19 –

1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

In summary, petitioner has failed to demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### C.  Refusal to Issue Instanter Subpoenas/Denial of Compulsory Process

Petitioner also claims that the trial court erred in refusing to issue instanter subpoenas to summon his alibi witnesses, thereby denying him his right to compulsory process.  The state argues that this claim is procedurally barred in this federal proceeding.  The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, the state courts clearly rejected petitioner's claim on procedural grounds.  In the state post-conviction proceedings, the district court held:

> The state ... argues that this claim is procedurally barred from review under LSA-C.Cr.P. art. 930.4(C), which states if the application alleges a claim that was raised at trial, but was inexcusably not pursued on appeal, the court may deny relief.  The state also argues that petitioner's application has met the requirements under LSA-C.Cr.P. art. 930.4(F), as petitioner claims on his application that he failed to raise the claim at trial or on appeal because trial counsel was ineffective.
>
> The court has reviewed this claim.  The petitioner's claim is barred because it could have been, but were [sic] not, raised on appeal.  Under La.C.Cr.P. art. 930.4, such claims should be denied.  Additionally, petitioner [sic] reason for not raising this claim is found to be without merit, mainly because the trial counsel moved for instanter subpoenas at trial.  As the state points out, under State ex rel. Rice v. State, 749 So.2d 650 (La. 1999), petitioner's proper use of the Uniform Application satisfies the requirement of LSA-C.Cr.P. art. 930.4(F).[27]

---

[27]  State Rec., Vol. II of III, Order dated July 23, 2010.

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal likewise held:

> [T]he trial court correctly found relator's claim that his right to compulsory process had been violated was procedurally barred from review under LSA-C.Cr.P. art. 930.4(C) because the claim was raised at trial and not pursued on appeal.  In his post-conviction relief application, relator argued his right to compulsory process was violated when the trial court refused to issue an instanter subpoena to summons an alibi witness for trial.  On appeal, relator did argue that the trial court erred in denying his counsel's motion for a recess in order to obtain the presence of witnesses.  He further argued on appeal that he was denied his constitutional right to put on a defense and the denial of the recess was done in retaliation for his failure to return for the remainder of his trial.
>
> On appeal, relator did not argue a violation of his right to compulsory process due to the trial court's refusal to issue an instanter subpoena, as he did in his post-conviction application. Therefore, the trial court correctly found relator's claim is procedurally barred for failure to raise the claim on appeal.[28]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons;[29] however, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."  Finley, 243 F.3d at 218.

As noted, the state courts found petitioner's claim to be procedurally defaulted under the Louisiana Code of Criminal Procedure, which provides:  "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court

---

[28]  Riggins v. Cain, No. 10-KH-725 (La. App. 5th Cir. Dec. 2, 2010); State Rec., Vol. II of III.

[29]  State ex rel. Riggins v. State, 75 So.3d 936 (La. 2011) (No. 2011-KH-0023); State Rec., Vol. II of III.

may deny relief." La. Code Crim. P. art. 930.4(C).  It is well-established that article 930.4(C) is an independent and adequate state court ground sufficient to procedurally bar claims from federal *habeas* review.  See, e.g., Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

When, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

It appears that petitioner is attempting to argue that the default of this claim was caused by appellate counsel's ineffectiveness.  If so, that attempt fails for two reasons.

First, although an ineffective assistance claim can in some circumstances serve as a cause to overcome a procedural bar, it cannot do so here.  Because petitioner did not argue in his state post-conviction application that his appellate counsel was ineffective in this regard, and because he would now be barred from so arguing, see La. Code Crim. P. art. 930.4(E), any such ineffective assistance of appellate counsel claim would itself be procedurally defaulted.  A procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred claim unless plaintiff shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim.  See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000); Hatten v. Quarterman, 570 F.3d 595, 605 (5th Cir. 2009); Stevenson v. Cain, Civ. Action No. 06-1244, 2006 WL 2850167, at *15 (E.D. La. Oct. 4, 2006).  Petitioner has made no attempt whatsoever to make such a showing in this case.

Second, in any event, petitioner's contention that his appellate counsel was ineffective has no merit.  As noted previously, in order to prove ineffective assistance of counsel, a petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  For the following reasons, petitioner clearly has not made that showing.

As an initial matter, it must be noted that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  Indeed, "[e]xperienced advocates since time

– 24 –

beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

 The applicable test is instead whether the ignored issue was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000). That is not the case here. On direct appeal, counsel argued that there was insufficient evidence to support petitioner's conviction and that the trial court abused its discretion in denying the defense motion for a recess to obtain the presence of defense witnesses. Although those claims were weak, a claim that the trial court erred in denying the instanter subpoenas was certainly no stronger. Rather, it suffered from the same defect as the related claim concerning the denial of the recess, i.e. defense counsel failed to show that the testimony of the missing witnesses would be beneficial to the defense. Therefore, it cannot be said that appellate counsel performed deficiently by failing to assert such a claim.

 Moreover, in any event, petitioner's claim also fails on the prejudice prong of the Strickland analysis. In order to prove the prejudice necessary to support a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had

not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial

court judgment based on the alleged error.  Briseno, 274 F.3d at 210.  Petitioner cannot make that

showing.  As noted, this claim is inherently related to the claim that the trial court abused its

discretion in denying a recess to obtain the witnesses' presence.  Because the appellate courts

emphatically rejected that claim, then it necessarily follows that they would have likewise rejected

this related claim that trial court erred in failing to issue the instanter subpoenas, the service of which

was the underlying and sole reason for the recess.

        For all of these reasons, the purported ineffectiveness of counsel cannot serve as

cause for the default of this claim.  In light of that fact, and because petitioner has established no

other cause for default of the claim, the Court need not consider whether actual prejudice would

result from the application of the procedural bar.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996)

("Absent a showing of cause, it is not necessary for the court to consider whether there is actual

prejudice.").

        Because petitioner has not met the "cause and prejudice" test, this Court need

consider this claim only if the application of the procedural bar would result in a "fundamental

miscarriage of justice."  However, in order to establish that there would be a "fundamental

miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent

of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not

commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted).

Petitioner has made not made that showing; on the contrary, the evidence against him, including the

victim's testimony, was overwhelming.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claim that the trial court erred in refusing to issue an instanter subpoena to summon his alibi witnesses, thereby denying him his right to compulsory process, is procedurally barred and cannot be considered by this Court.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Brandon Riggins be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this second day of May, 2013.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.